**In the Matter of The Complaint of COM-PANIA NAVIERA MARASIA S. A., as Owner of the motorvessel ATLANTICO, for Exoneration from or limitation of Liability.**

No. 79 Civ. 1051–CSH.

United States District Court,
S. D. New York.

March 7, 1979.

Kirlin, Campbell & Keating, New York City, for plaintiff; Richard H. Brown, Jr., New York City, of counsel.

## MEMORANDUM OPINION

HAIGHT, District Judge:

The *ex parte* application of plaintiff shipowner for preliminary injunctive relief pur-

suant to the limitation of liability statute, 46 U.S.C. §§ 183 *et seq.,* raises a question of significance with respect to the appropriate security which must be posted in order to invoke the benefits of the statute.

In its complaint, plaintiff alleged that it is the owner of the Spanish flag motorvessel ATLANTICO which, on August 31, 1978, bound from Cadiz, Spain to Salerno, Italy, collided in the Strait of Gibraltar with the Panamanian flag motorvessel JOLLY AZ-ZURRO. The JOLLY AZZURRO sank shortly thereafter, with apparent loss of life, and the total loss of her cargo. Plaintiff alleged that it would in consequence be presented with numerous claims, greatly in excess of the value of the ATLANTICO and her freight pending for the voyage during which the casualty occurred. Denying liability for such claims, plaintiff also claimed the benefit of the statutory limitation of liability procedures.

The statutory procedures are further implemented by Supplemental Rule F, F.R. Civ.P. Rule F(3) provides that if the plaintiff complies with the requirements of subdivision (1) of the Rule, "all claims and proceedings against the owner or his property with respect to the matter in question shall cease," and that on application of the plaintiff "the court shall enjoin the further prosecution of any action or proceeding against the plaintiff or his property with respect to any claim subject to limitation in the action." Additional subdivisions provide for notice of the limitation proceeding to claimants (4); the filing of claims and answers (5); further information to be given to the claimants (6); proceedings whereby claimants may challenge the sufficiency of the limitation fund or security (7); and provisions for objections to claims and the distribution of the limitation fund (8).

■ The petitioning shipowner must give security at the time of filing the complaint; and the posting of proper security is a condition precedent to obtaining the injunctive order under Rule F(3). Rule F(1) provides, in respect of security:

"The owner (a) shall deposit with the court, for the benefit of claimants, a sum equal to the amount or value of his interest in the vessel and pending freight, or approved security therefor, and in addition such sums or approved security therefore, as the court may from time to time fix as necessary to carry out the provisions of the statutes as amended; or (b) at his option shall transfer to a trustee to be appointed by the court, for the benefit of claimants, his interest in the vessel and pending freight, together with such sums, or approved security therefor, as the court may from time to time fix as necessary to carry out the provisions of the statutes as amended. The plaintiff shall also give security for costs and, if he elects to give security, for interest at the rate of 6 per cent per annum from the date of the security."

■ Thus the shipowner may invoke the limitation of liability act by posting security in one of three ways: physical surrender of the vessel and pending freight to a trustee; a deposit with the court of cash equal to the amount or value of his interest in the vessel and pending freight; or "approved security therefor." In practice, the posting of "approved security" is by far the most common procedure.

In proceedings in this Court, the form and sufficiency of sureties are governed by General Rule 31. Rule 31(a) states generally, and with exceptions not here pertinent, that the execution of a bond, undertaking or stipulation by a surety or sureties only is sufficient; the Rule is comparable to the statutory provision found in 6 U.S.C. § 6. Rule 31(b) goes on to provide:

"Except as otherwise provided by law, every bond, undertaking or stipulation must (1) be secured by the deposit of cash or government bonds in the amount of the bond, undertaking or stipulation, or be secured by (2) the undertaking or guaranty of a corporate surety holding a certificate of authority from the Secretary of the Treasury, or (3) the undertaking or guaranty of two individual residents of the Southern or Eastern Districts of New York, each of whom owns real or personal property within such dis-

tricts worth double the amount of the bond, undertaking or stipulation, over all his debts and liabilities, and over all obligations assumed by him on other bonds, undertakings, or stipulations, and exclusive of all legal exemptions."

As to corporate sureties, the Secretary of the Treasury issues certificates of authority in accordance with statutory provisions appearing at 6 U.S.C. §§ 6–13. The Clerk of the Court maintains a current list of those surety companies holding certificates of authority from the Secretary, and accepts undertakings only if given by a company on the list. Under the statutory scheme, a qualifying surety company must be incorporated under the laws of the United States or of one of the States, § 6, and must by written power of attorney appoint an agent for service of process, who must be a citizen of the State within which court is held (§ 7).

■ In the case at bar, plaintiff did not tender an undertaking executed by a domestic surety company. Rather, plaintiff proffered an undertaking executed on behalf of The Britannia Steam Ship Insurance Association Limited, a British mutual association concerned in marine insurance. The undertaking was executed on behalf of Britannia by New York counsel for plaintiff, pursuant to telexed authority. Britannia's undertaking, referred to in accordance with the admiralty practice as an "ad interim stipulation," follows the customary form set forth in 3 *Benedict on Admiralty* (1975) at § 61, pp. 7–9, 7–10.

Because the undertaking was not given by an authorized domestic surety company, the Clerk quite properly raised the question of whether the security should be "approved" under Rule F(1).

It has been the practice for many years in the maritime industry to accept letters of undertaking given by underwriters, domestic or foreign, in order to avoid the detention of vessels and the expense of posting security in other forms. Typically, the situation arises in a collision case, where the two shipowners and their counsel agree that, instead of arresting the respective vessels to perfect *in rem* jurisdiction and obtain security for the claims, it will be sufficient simply to exchange underwriters' letters of undertaking. In such a letter, the underwriter agrees on behalf of its shipowner-assured to appear and defend the claim of the other shipowner in a designated jurisdiction;[1] to satisfy any judgment, usually up to a stipulated maximum amount; and to cause a surety company bond to be posted in the event of a subsequent demand to do so. Such underwriters' letters are almost routinely exchanged in litigation between shipowners or cargo interests and shipowners, because the marine insurance world is a relatively small one, the parties, counsel and their underwriters know each other well, and are prepared to enter into such consensual arrangements so as to minimize inconvenience and expense.

The inception of a limitation of liability proceeding stands upon a somewhat different posture, since the shipowner does not always know who all the claimants will be, or in what forum they may press their claims. The shipowner may, of course, have an accurate idea of the identity of the major claimants; quite often informal negotiations commence, immediately after the casualty, between the parties in respect of jurisdiction and security. But the shipowner perceiving a necessity to invoke the benefits of the limitation of liability statute and rules is not in a position, at the time of filing of the complaint and posting of security, to obtain the consent of all potential claimants to a foreign underwriter's undertaking. Such approval, if granted at all, must be by the court, and upon appropriate terms.

■ In my view, there is no reason why the Court should not approve such an undertaking at this preliminary stage, provided that appropriate safeguards are included in the order. Proceeding in this manner will result in savings in respect of premiums or collateral. Any device which de-

---

1. In some letters, that obligation is contingent upon the vessel calling at a port within the jurisdiction subsequent to execution of the letter.

creases the cost of litigation, without prejudicing the interests of present or potential litigants, is to be encouraged. Judge Pierce reached this conclusion when, in an unreported order, he approved a comparable letter of undertaking given by a foreign underwriter at the time of filing another shipowner's complaint for exoneration from or limitation of liability. *In the Matter of the Complaint of Compagnie Nationale Algerienne de Navigation,* 78 Civ. 5972 (LWP). I reach the same conclusion in the case at bar, although as noted *infra* the order which I am entering concurrently with this opinion provides in more specific detail for the protection of claimants. My intention is to render explicit what is quite clearly implicit in Judge Pierce's order.

Britannia's undertaking in the case at bar is in the sum of $1,849,985, that being plaintiff's calculation of the value of the AT-LANTICO and her pending freight. The undertaking contains the usual provisions for appraisement and the posting of further security, if any claimant sustains an objection to the amount of the limitation fund. The Court's order, entered today, approves the form of undertaking given by Britannia, "on condition that no claimant objects to this surety." That language is taken from Judge Pierce's order in *Compagnie Nationale, supra.* The order in the case at bar will contain the following additional provision:

"Any claimant in these proceedings may, at any time, signify by written notice, filed with the Court and served upon other parties of record, its dissatisfaction with the Britannia Steam Ship Insurance Association Limited as surety herein. In the event of such notice, plaintiff shall within five (5) business days of the receipt thereof cause security to be posted in the form provided by General Rule 31 of this Court, failing which the injunction entered concurrently herewith will be vacated as to all claimants, and the Court will make such further orders as the justice of the cause may require."

It is the intent of this provision that any claimant have an absolute right to reject

Britannia as surety, in which event this ad interim form of security comes automatically to an end, and plaintiff must post security in accordance with the requirements of General Rule 31 of this Court, in order to continue to benefit by the provisions of the limitation of liability statute.